UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TIFFANY N. POTTER,                    )
                                      )
            Plaintiff,                )
                                      )
                                      )
v.                                    )        No. 3:14-CV-333
                                      )        (VARLAN/GUYTON)
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
            Defendant.                )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support.  [Doc. 14 & 15].  Also before the Court is Defendant's Motion for

Summary Judgment and Memorandum in Support [Docs. 16 & 17].  Plaintiff Tiffany N. Potter

seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision

of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the

Commissioner").

On April 27, 2010, Plaintiff protectively filed an application for disability insurance

benefits ("DIB") and supplemental security income ("SSI") with an alleged onset date of

September 29, 2008.  [Tr. 148-57, 173].  The Social Security Administration denied Plaintiff's

application initially and upon reconsideration.  [Tr. 93-96, 101-04].  Plaintiff timely filed her

request for a hearing, and appeared before Administrative Law Judge James Dixon, on

November 28, 2012 in Knoxville, Tennessee.  [Tr. 107-08, 42].  The ALJ issued an unfavorable

decision on March 7, 2013. [Tr. 25-41]. Plaintiff filed her appeal of the decision, which the Appeals Council declined to review on July 1, 2014. [Tr. 1-8].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 17, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since September 29, 2008, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity and other hyperalimentation; and affective mood disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to no more than frequent use of hand controls bilaterally; and no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. The claimant is able to understand and follow three-step instructions; and persist and attend for two-hour segments, eight-hours a day, for a 40-hour workweek. She is able to occasionally engage in work, task-related, interpersonal interactions; and adapt to workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 16, 1980 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2008, through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 30-37].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her

4

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

5

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

On April 27, 2010, Plaintiff protectively filed an application for DIB and SSI with an alleged onset date of September 29, 2008. [Tr. 148-57, 173]. Plaintiff was born on April 16, 1980 and received her GED in 1996. [Tr. 173, 192]. Plaintiff reported past relevant work as an administrative assistant, admissions clerk, and secretary. [Tr. 193]. Plaintiff alleged that she ceased work due to her conditions on October 29, 2009, which included rheumatoid arthritis

6

("RA"), post-traumatic stress syndrome ("PTSD"), and depression. [Tr. 191-92]. Plaintiff previously filed for social security benefits and an ALJ issued an unfavorable decision on February 18, 2011. [See Tr. 73-89].

### 1. Treating physicians and nurses[1]

Plaintiff received treatment from Family Nurse Practitioner ("FNP"), Sandra M. Wade from 2005 through 2012. [Tr. 261-338, 383-462, 486-536]. Plaintiff has a history of juvenile rheumatoid arthritis, and in 2009, she complained of pain in her hands and knuckles. [Tr. 329, 387]. X-rays of Plaintiff's hands were taken on November 15, 2009. [Tr. 330]. The images of Plaintiff's bilateral hands were negative and showed "no evidence of fracture or bony abnormality. The joints are preserved. Soft tissues are unremarkable. There is no evidence of radiopaque foreign body. Bony anatomy appears intact." [Id.]. A Nerve Conduction Study was performed on December 8, 2009 and revealed "a normal electrophysiological study. There is no evidence of neuropathy in the upper extremities. There is no evidence of an acute left cervical radiculopathy." [Id.]. In April of 2010, Plaintiff reported increased pain and swelling in her hands, difficulty performing manual tasks such as making a fist or turning a doorknob, and requested referral to a rheumatologist. [Tr. 385]. She stated that she ran out of her medications and was unable to refill them due to lack of insurance. [Id.]. In August 2012, Plaintiff reported crying, increased anxiety, and feelings of helplessness. [Tr. 489]. FNP Wade diagnosed Plaintiff with rheumatoid arthritis on October 8, 2012. [Tr. 486].

Dr. Sivalingam Kanagasegar, a rheumatologist specialist with the Cumberland Physician Group, treated Plaintiff for joint pain from June 2010 through October 2012. [Tr. 349-58, 472-

---

[1] Because all the issues raised by Plaintiff concern her allegations of physical impairments, specifically her alleged rheumatoid arthritis, the Court will only focus on the facts and evidence concerning her physical impairments.

79, 567-91]. On June 15, 2010, Dr. Kanagasegar noted that FNP Wade referred Plaintiff for a rheumatoid arthritis evaluation and found that Plaintiff had "developed a subacute onset of pain in both hands . . . The pain is present most of the time. She has more pain in the morning. Sometimes, she has noticed significant joints swelling." [Tr. 351]. He started her on prescriptions of Prednisone and Methotrexate. [Tr. 352]. In July of 2010, Plaintiff reported "increasing pain after stopping the prednisone. She thinks Methotrexate is not at all helping. She has noticed more tiredness for the last few weeks. She has pain in the hands, wrists, shoulders, knees, and ankles." [Tr. 349]. He assessed that Plaintiff "probably has seronegative rheumatoid arthritis" and increased her Methotrexate prescription. [Tr. 350]. In February 2012, Plaintiff continued to report increased pain in her hands, wrists, and shoulders. [Tr. 581]. Dr. Kanagasegar reported that he "had prescribed sulfasalazine, which she took for one month. I also discussed with her about Humira, but the patient was very upset about the side effects and she did not come for a follow up visit." [Id.]. He further noted that "for the last two weeks, she has noticed increasing pain in the hands. Because of the pain and swelling, she has difficulty in making a fist and doing day-to-day activities." [Id.]. By October 2012, Dr. Kanagasegar found that Plaintiff's "joint symptoms are fairly stable. However, whenever the weather is very cold, she had noticed more pain. She is still taking Kadian two a day and occasionally Oxycodone. She thinks Methotrexate and sulfasalazine help. Morning stiffness lasts about 10-15 minutes." [Tr. 589]. Dr. Kanagasegar diagnosed seropositive rheumatoid arthritis and "long term use of medications." [Id.].

Plaintiff sought treatment for pain relief at Pain Consultants of East Tennessee from February 2012 through May 2013. [Tr. 592-686]. She was assessed with rheumatoid arthritis, depression, anxiety, and morbid obesity. [Tr. 597]. Drs. James McCoy and James Choo

8

recommended a TENS unit for her hands. [Tr. 598]. In April and May of 2013, Plaintiff continued to complain of joint pain, and Dr. Choo recommended "long term medical management with opiates." [Tr. 679-85]. On May 1, 2013, Plaintiff reported increased joint pain, and Dr. Choo found that Plaintiff "suffers from chronic joint pain due to RA." [Tr. 681]. Plaintiff was diagnosed with rheumatoid arthritis, depression, anxiety, morbid obesity, and hypertension. [Tr. 685].

On May 6, 2013, Plaintiff presented to University Rheumatology Associates for a new patient consultation. [Tr. 14]. Plaintiff reported that she was currently taking "methotrexate and sulfasalazine and that "this makes her symptoms tolerable, but she still has pain in her hands, swelling, and AM stiffness." [Id.]. Plaintiff stated that she was "going to be placed on Humira, but wanted a second opinion before starting." [Id.]. She was assessed with five problems, including rule-out rheumatoid arthritis, long term medications, cavus deformity of the foot, chronic pain syndrome, and obesity. [Tr. 18].

### 2. Non-Treating Physicians

Dr. Jeffrey A. Uzzle conducted a physical examination on July 8, 2010. [Tr. 340]. Dr. Uzzle noted that Plaintiff was diagnosed with juvenile arthritis as a child and that she received treatment from Dr. Kanagasegar for continued pain in her joints of the hands, feet, and wrists. [Id.]. Dr. Uzzle stated that Plaintiff "has significant obesity that limits examination of the joints in the forelimbs, but I can detect synovitis and inflammation in several joints in both hands primarily." [Tr. 341]. Dr. Uzzle assessed that:

> Overall, her joint inflammation and changes and limitations are in the mild degree . . . I think she would have some difficulty in using the hands for manual task[s]. She may have some difficulty with prolonged standing and walking, but I think she can do a combination of sitting, standing, and walking for an eight-hour

day. I think she should be able to do at least light level lifting and carrying of 20 pounds occasionally. . . and should at least be able to do occasional forward bending, twisting, and stooping type activities.

[Tr. 342].

Dr. Marvin H. Cohn submitted a non-examining physical RFC analysis on September 14, 2010. [Tr. 463-71]. He assessed that Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, sit, stand, or walk for up 6 hours in an 8-hour workday, and was limited in her ability to push or pull in her upper extremities. [Tr. 464]. He found Plaintiff was occasionally limited in all postural functions and limited in her gross and fine manipulations. [Tr. 465-66]. Dr. Charles S. Settle confirmed this assessment on November 4, 2010. [Tr. 481].

### B. Other Evidence

Plaintiff appeared before ALJ Dixon for an administrative hearing November 28, 2012, in which Plaintiff and vocational expert ("VE"), James Miller, testified. [Tr. 42-67]. Plaintiff testified that she received pain medication from Dr. Choo after she was referred by Dr. Kanagasegar. [Tr. 51]. Plaintiff reported that Dr. Kanagasegar's records were not admitted in the record and testified that she would sign a release form to include those records in her case file. [Tr. 53]. Plaintiff further testified that she was planning on receiving a second opinion from a rheumatologist group in Chattanooga and that she would sign an appropriate release forum upon receiving the physician's contact information. [Tr. 53]. Plaintiff stated that Dr. Kanagasegar and the new rheumatologist were the only records missing from her case file. [Tr. 54].

The VE testified that all of Plaintiff's past relevant work was either light or sedentary and skilled or semi-skilled. [Tr. 58, 62]. Based on a fourth hypothetical, which was subsequently

determined to be Plaintiff's RFC, the VE testified that Plaintiff could not perform past relevant work because all past employment required more than "simple, unskilled work." [Tr. 62]. However, the VE found that such an individual could perform such work as an office helper, counter clerk, mail clerk, or sales attendant. [Id.].

The ALJ issued an unfavorable decision on March 7, 2013. [Tr. 25-41]. The ALJ concluded that Plaintiff's alleged rheumatoid arthritis, PTSD, and depression did not qualify as "severe impairments." [Tr. 31]. In determining Plaintiff's RFC, the ALJ considered medical records from Dr. Kanagasegar and FNP Wade. [Tr. 34-35]. He granted great weight to Drs. Uzzle, Cohn, and Settle "because their limitations to a modified range of light work are compatible with objective medical evidence of record." [Tr. 34]. The ALJ concluded that although Plaintiff could not perform past relevant work, including "restaurant hostess (light, unskilled)" and "administrative assistance (sedentary, unskilled)[,]" "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 36]. Specifically, the ALJ found Plaintiff could perform all work identified by the VE during the administrative hearing. [Tr. 37].

## V.    POSITIONS OF THE PARTIES

Plaintiff argues initially that the ALJ failed to fulfill a heightened duty to fully develop the record. Plaintiff argues that due to her initial status as a *pro se* litigant, the ALJ had a special duty to investigate and develop the record. Plaintiff contends the ALJ failed in this duty by not obtaining Dr. Choo's medical records, failing to fully consider Dr. Kanagasegar's treatment records, and not thoroughly or adequately questioning Plaintiff during the administrative hearing. Next, Plaintiff contends that the ALJ failed to develop a RFC substantially supported by the evidence, and that his reliance on that RFC at step five was in error. The Plaintiff further argues

11

that the ALJ did not properly weigh the medical evidence in determining Plaintiff's functionality.

The Commissioner responds that the ALJ fully developed the record and Plaintiff enjoyed a full and fair hearing. The Commissioner argues that Plaintiff had every opportunity to present Dr. Choo's records and chose not to do so at the hearing or in the months following. Further, the Commissioner argues that Dr. Choo's records were submitted to the Appeals Council who considered the evidence and declined to review the ALJ's decision. The Commissioner argues that the Appeals Council's decision was reasonable and that Plaintiff failed to show good cause for not presenting these records at the administrative level. The Commissioner further argues that substantial evidence supports the ALJ's RFC assessment and his determination at step five. In formulating Plaintiff's RFC, the Commissioner contends that the ALJ properly weighed the medical evidence of record.

## VI.    ANALYSIS

The Court will address each of the issues presented in turn.

### A.  Duty to Fully Develop the Record

Plaintiff argues that the ALJ failed to fully develop the record by neglecting much of Dr. Kanagasegar's treatment records, failing to request Dr. Choo's medical records, and not providing Plaintiff with a full and fair hearing. The Court disagrees.

"The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Pursuant to 20 C.F.R. § 416.912(a):

> This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the

Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.

Under special circumstances, an ALJ has a heightened duty to develop the record, such as "when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures[.]" Rise v. Apfel, 234 F.3d 1269, at *2 (6th Cir. 2000) (citing Lashley v. Secretary of Health and Human Servs., 708 F.2d 1048, 1051-52 (6th Cir. 1983)). In Lashley, the Sixth Circuit explained that the ALJ has a special duty "where the claimant appears without counsel." 708 F.2d at 1051.

However, subsequent Sixth Circuit decisions have distinguished Lashley, which involved a discrepancy in the record and a plaintiff that was of "limited intelligence, was inarticulate, and appeared to be easily confused." Id. at 1052. After Lashley, the Sixth Circuit clarified:

> [E]ven though we scrutinize with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal . . . Rather, we examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing.

Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 856 (6th Cir. 1986) (citing Holden v. Califano, 641 F.2d 405, 408 (6th Cir. 1981)); see also Wilson v. Comm'r of Soc. Sec., 280 F. App'x 456, 459 (6th Cir. 2008) ("Absent such special circumstances—which do not exist in this case—this court repeatedly affirms that the claimant bears the ultimate burden of proving disability . . . Though [plaintiff] chose to proceed without counsel, the hearing transcript discloses her grasp of the proceedings and the adequacy of her case presentation to the ALJ.") (citing Trandafir v. Comm'r of Soc. Sec., 58 Fed. App'x. 113, 115 (6th Cir. 2003)); Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1172 (6th Cir. 1990) (finding that the ALJ "did not

13

fail in his duty to fully and fairly develop the record" because the plaintiff "gave no evidence of impaired mental ability as the claimant in <u>Lashley</u> did.").

Further, this "special duty" is meant to apply to the ALJ's conduct during the administrative hearing, "by taking extra time and extra care in questioning the claimant and other witnesses during the hearing, and by making specific requests for additional documentation, testimony, or evidence that is unavailable at the hearing, but would be helpful in rendering a decision." <u>Morgan v. Astrue</u>, No. 3:09-CV-262, 2010 WL 3723992, at *8 (E.D. Tenn. June 30, 2010) (internal citations omitted). As the Court of Appeals in <u>Lashley</u> made clear, the ALJ is under no obligation to serve as a *pro se* litigant's advocate. <u>See</u> 708 F.2d at 1051 ("the administrative law judge must not become a partisan and assume the role of counsel"). Rather, where the ALJ's "special duty" is triggered and she is aware of relevant evidence absent from the record, the ALJ shall:

> (1) advise the claimant to obtain and submit those records; (2) suggest ways that the claimant might obtain the records; (3) make sure that the claimant understands how to submit the records; (4) refrain from making a disability determination until the claimant has been given a reasonable amount of time to provide the records; and (5) explain to the claimant how the disability determination will be made if the records are not submitted . . . But the ALJ's "special, heightened duty" typically does *not* impose upon him an affirmative duty to obtain the records himself.

<u>Morgan</u>, 2010 WL 3723992, at *8 (citing <u>Lashley</u>, 708 F.2d at 1052-53).

Here, the Court finds that the ALJ had a heightened duty to ensure Plaintiff a full and fair hearing and obtain a complete medical record because he was aware that relevant evidence was missing from the case file. [Tr. 51-53] (The ALJ noting that Dr. Kanagasegar's records were missing and requesting that Plaintiff sign new releases for those reports, as well as for records from the Chattanooga rheumatologist who was scheduled to provide Plaintiff with a second

14

opinion).  The Court finds that the ALJ met his heightened duty in regards to the administrative hearing and will address each of Plaintiff's allegations in turn.

First, Plaintiff argues briefly that the ALJ did not properly weigh Dr. Kanagasegar's medical records.  [Doc. 15 at 17].  The Court finds that this argument is not relevant to the issue of whether the ALJ fully developed the record.  As explained above, the ALJ's heightened duty has more to do with the ALJ's conduct during the administrative hearing than her analysis in the subsequent opinion.  See Morgan, 2010 WL 3723992 at *8.  Plaintiff's argument is more appropriately considered under an analysis of the ALJ's RFC determination.  Therefore, the Court will address the ALJ's consideration of Dr. Kanagasegar's medical records below in determining whether the ALJ's RFC determination is supported by substantial evidence.

Next, Plaintiff contends that the ALJ erred in not requesting Dr. Choo's medical records. [Doc. 15 at 18-19].  The Court finds that the ALJ was aware of Dr. Choo's treatment relationship and could have requested those records.  However, the Court finds no error here as the Plaintiff had the knowledge, resources, and opportunity to submit these records.  The Plaintiff is correct that she informed the ALJ of her treatment with Dr. Choo.  [See Tr. 51].  During the administrative hearing, the ALJ asked the Plaintiff who prescribed her pain medication, and she responded "Dr. Choo at the Pain Consultants of East Tennessee.  I was referred there by my rheumatologist." [Id.].  The ALJ proceeded to question Plaintiff about her relationship with Dr. Kanagasegar and noted that "[w]ell, I guess we better get some records for you then, because [Dr. Kanagasegar's records currently on file] are not current enough." [Tr. 52].  The ALJ requested a release for Dr. Kanagasegar's most recent records, as well as a release from the rheumatologist Plaintiff was planning on seeing for a second opinion.  [Tr. 52-54].  The ALJ then asked Plaintiff, "[o]ther than those two sets of records, and let me make a note about those

15

right now, new rheumatologist consult and this doctor that we've been discussing, Mr. Unpronounceable we'll call him . . . can you think of any other records that we might need to get in your case?" [Tr. 54]. Plaintiff responded in the negative. [Id.].

Although the ALJ was aware of Dr. Choo's treatment records, Plaintiff was directly questioned as to whether there were additional records that she wished to add. [Id.]. She declined. [Id.]. The ALJ took special care to explain to her the need for additional releases, how the forms were filled out, what she had to do, and where she should submit the releases. [See Tr. 53-54, 67]. The ALJ further granted Plaintiff's request to speak freely during the hearing, which she did, articulately arguing her case and describing the depth of her impairments. [Tr. 65-66]. The Plaintiff had every opportunity to discuss Dr. Choo's records and submit them for the ALJ's consideration. The Plaintiff is experienced in the disability application process as she previously filed an application, requested a hearing, declined to personally appear, and was informed of the ALJ's decision of February 18, 2011. [Tr. 76]. This case is distinguishable from Lashley as the Plaintiff is of sound mind and aware of the disability process.

Finally, Plaintiff argues that she did not receive a full and fair hearing. The Court finds this argument to be without merit. Although the ALJ did not spend a great deal of time questioning Plaintiff about the specific extent of her subjective complaints, he took great care to explain the administrative hearing process and disability analysis, informed her of her rights, and questioned her regarding her impairments, work history, living arrangements, medical history, and medications. [Tr. 44-47, 49-56]. Further, he allowed Plaintiff to speak freely about her impairments, and Plaintiff articulately set forth her subjective complaints and described the impact of her impairments on her daily life. [Tr. 65-66]. The Court finds that the ALJ's conduct during the administrative hearing met any heightened or special duty imposed on the ALJ due to

16

Plaintiff's status as a *pro se* applicant. Plaintiff's allegations of error in this regard are without basis.

**B. RFC Analysis, Weighing the Medical Evidence, and the ALJ's Determination that Plaintiff Can Perform Work in the National Economy**

Next, Plaintiff argues that the ALJ's RFC determination was unsupported by substantial evidence and that the ALJ erred in his consideration of the medical evidence. In order to assess the ALJ's decision that Plaintiff is not disabled, the Court must first inquire as to whether the ALJ's RFC determination was based on substantial evidence. The Court does so and finds in the negative.

An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence of record. Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. Id. A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting Yang v. Comm'r of Soc. Sec., No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003).

However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to her functional and physical limitations. Simpson v. Colvin, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) adopted by, 3:11-CV-00481, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." Wright v. Astrue, 1:07-CV-226, 2009 WL 890051 (E.D. Tenn. Mar. 26, 2009) (quoting Bailey v. Comm'r of Soc. Sec., 1999 WL 96920, *4, (6th Cir. Feb. 2, 1999)).

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with the any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). If the opinion of a treating physician is supported by the record, it is entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

In considering non-treating physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological

18

consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6), the same factors used to analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); Sommer v. Astrue, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

The ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). However, an ALJ need not specifically address each medical opinion or piece of evidence in order to adequately consider the record in its entirety. See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) ("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)).

Here, Plaintiff argues that the ALJ erred in his consideration of Dr. Kanagasegar's medical records and the opinions of non-treating physicians, Drs. Uzzle, Cohn, and Settle. The Court concurs. Initially, the Court finds the ALJ's consideration of Dr. Kanagasegar's treatment records to be inadequate and incomplete. The ALJ has a duty to consider the record as a whole

19

and formulate a RFC that is supported by substantial evidence. See Howard, 376 F.3d at 554 (finding error "where the administrative law judge was found to have selectively considered the evidence in denying benefits"). The ALJ considered only portions of Dr. Kanagasegar's treatment records and chose to ignore his diagnosis of seropositive rheumatoid arthritis entirely. [See Tr. 34]. Although the ALJ acknowledged Plaintiff's examination in July 2012, he seemed to only consider the portions of her treatment records that corroborated a finding of "not disabled." The ALJ concentrated on Plaintiff's obesity, Dr. Kanagasegar's notations of improvement with medication, and Plaintiff's refusal to try Humira. [Id.].

However, Dr. Kanagasegar's records extend through October 2012 and contain not only his diagnosis of seropositive rheumatoid arthritis, [Doc. 589-90], but a record of Plaintiff's consistent symptomatology. [See 582] (diagnosing seropositive rheumatoid arthritis in February 2012 and finding that Plaintiff's joints were swollen, "tender and synovitis was noted."); [Tr. 584-85] (records from April 2012 reflecting moderate to severe pain in Plaintiff's hands and wrists and confirming the diagnosis of seropositive rheumatoid arthritis); [Tr. 588] (finding in July 2012 that Plaintiff had "pain in multiple joints. There was no active synovitis appreciated on examination today. Her very first rheumatoid factor was slightly elevated, but the recent rheumatoid factor and anti-CCP antibody were negative."); [Tr. 589-90] (records from October 2012 diagnosing seropositive rheumatoid arthritis and finding that Plaintiff "has had significant swelling of the small joints of the hands in the past but today's examination revealed no synovitis. However, she still has significant peripheral joint pain without synovitis."). These records are corroborated by those of FNP Wade, who diagnosed Plaintiff with rheumatoid arthritis in October 2012. [Tr. 486]. Her records further capture Plaintiff's consistent complaints of pain, swelling, and functional impairment from 2009 through 2012. [See Tr. 329, 387, 385,

20

486].

The ALJ declined to consider this evidence or even address Dr. Kanagasegar's most current diagnosis. Instead, the ALJ overly relied on the factors that detracted from Plaintiff's subjective complaints and her treating physician's diagnosis. For instance, the ALJ considered Plaintiff's refusal of Humira treatment as a basis for discrediting the seriousness of her impairment. [See Tr. 31 & 34]. Yet the record reflects that Plaintiff did not refuse this treatment due to lack of compliance or evidence of malingering. Instead, she was concerned with the severe side effects and sought a second opinion in order to determine if Humira was a wise choice of treatment for her condition. [See Tr. 581] (Dr. Kanagasegar noting Plaintiff's concern with Humira side effects); [Tr. 14] (University Rheumatology Associates' records stating that Plaintiff was "going to be placed on Humira, but wanted a second opinion before starting."); [Tr. 52] (Plaintiff's testimony confirming that she was seeking a second opinion from a rheumatoid arthritis specialist). The Court appreciates Plaintiff's concern with the side effects of a suggested medication plan and is unclear why the ALJ would fault her for investigating the best course of treatment options available to her. The Court is further unconvinced that Plaintiff's obesity provides substantial evidence for discounting the extensive records documenting her arthritic symptoms and diagnoses from a treating physician. Dr. Uzzle, who the ALJ granted great weight, [Tr. 34], found evidence of inflammation and synovitis regardless of Plaintiff's obesity. [See Tr. 341] (Plaintiff "has significant obesity that limits examination of the joints in the forelimbs, but I can detect synovitis and inflammation in several joints in both hands primarily.").

The ALJ cannot pick and choose the evidence that weighs in favor of his decision. See Howard, 376 F.3d at 554. To do so violates agency procedure. See 20 C.F.R. § 404.1527(b).

21

The Court finds that the ALJ failed to adequately consider Dr. Kanagasegar's treatment records and that such an error was not harmless. By ignoring much of Plaintiff's medical records, the ALJ did not give adequate consideration to her arthritic impairment in assessing her RFC.

This error also affected the ALJ's consideration of the opinions of Plaintiff's non-treating and non-examining physicians. The ALJ gave great weight to Drs. Uzzle, Cohn, and Settle "because their limitations to a modified range of light work are compatible with objective medical evidence of record." [Tr. 34]. Yet all of these physicians conducted their examinations or submitted their non-examining evaluations in 2010. [See Tr. 340] (Dr. Uzzle conducted a physical exam on July 8, 2010); [Tr. 463-71] (Dr. Cohn submitted a non-examining physical RFC analysis on September 14, 2010); [Tr. 481] (Dr. Settle affirmed Dr. Cohn's assessment in a non-examining physical RFC analysis on November 4, 2010). None of these physicians had the opportunity to view the wealth of evidence submitted in 2011 and 2012, specifically Dr. Kanagasegar's treatment records from 2012. Without the opportunity to consider Plaintiff's diagnoses and history of impairment and treatment, it is unclear why these physicians were granted great weight.

The ALJ also did not provide sufficient explanation for the weight assigned these physicians and failed to consider the factors set forth 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). The ALJ merely stated that Drs. Uzzle, Cohn, and Settle's opinions were "compatible with the objective medical evidence of record, as well as examination findings diagnoses and prescribed regimen of treatment, including medications (Exhibits 2F, 11F-12F)." [Tr. 34]. The cited exhibits refer to Drs. Uzzle, Cohn, and Settle's opinions, [see Tr. 40-41], and do not reference any exhibits of the objective medical evidence that evidently supports their opinions. Based on the ALJ's explanation, consisting of one sentence, the Court is unclear as to

22

what "examination findings diagnoses and prescribed regimen of treatment" [Tr. 34] and medications the ALJ relies. The Court concurs with Plaintiff that such consideration and explanation is inadequate to satisfy agency procedure. The Court finds that the ALJ erred in his consideration of the medical evidence.

Based on these findings of error, the Court concludes that the ALJ's RFC is unsupported by substantial evidence and violates agency procedure. Because the ALJ's RFC assessment was in error, any reliance on the RFC at step five was also misplaced. Therefore, the Court finds that Plaintiff is further correct that the ALJ erred at step five in finding she could perform work that exists in significant numbers in the national economy. [See Tr. 36].[2] Without a RFC that adheres to agency procedure and is supported by substantial evidence, the disability analysis cannot continue. Any subsequent finding by the ALJ is tainted by the error previously committed, warranting remand for consideration of Plaintiff's RFC and all subsequent steps of the disability analysis. The Court finds that the ALJ erred in his RFC determination and subsequent conclusion at step five of the disability analysis. Remand is appropriate in this case for reconsideration of Plaintiff's RFC, ability to perform past relevant work, and capability of performing other work in the national economy.

---

[2] The Court also notes that the ALJ erred at step five in classifying Plaintiff's past relevant work. During the administrative hearing, the VE testified that all of Plaintiff's past relevant work was either light or sedentary and skilled or semi-skilled. [Tr. 58, 62]. In his opinion, the ALJ concluded that Plaintiff could not perform past relevant work, including such jobs as "restaurant hostess (light, unskilled)" and "administrative assistance (sedentary, unskilled)[.]" [Tr. 36]. The VE identified these jobs as "light and semi-skilled" and "sedentary and skilled[,]" respectively. [Tr. 58]. The Court finds that the ALJ's statement is likely a typographical error. However, as his opinion currently reads, Plaintiff is capable of performing light, unskilled work, [Tr. 33], and should therefore be capable of performing past relevant work, as defined by the ALJ in his opinion [Tr. 36]. On remand, this issue should be addressed and corrected as necessary.

23

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion for Summary Judgment, **[Doc. 14],** be **GRANTED in part,** and that the Commissioner's Motion for Summary Judgment, **[Doc. 16],** be **DENIED in part.**

Accordingly, the Court **RECOMMENDS** that this case be remanded and:

- The ALJ shall reassess Plaintiff's RFC based on a consideration of the medical evidence as a whole, specifically considering the entirety of Dr. Kanagasegar's treatment records and the opinions of Plaintiff's non-treating and non-examining physicians;

- In reassessing Plaintiff's RFC, the ALJ shall consider the transcript as a whole, including the medical records of Dr. Choo and University Rheumatology Associates;

- Once the ALJ has reassessed Plaintiff's RFC based on a consideration of the record as a whole, he shall reconsider all subsequent and pertinent steps of the disability analysis based on the Plaintiff's reassessed RFC.

Respectfully submitted,

Bruce Guyton

United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).